UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:17-CR-011 |
| | ) | |
| JOSHUA FRANKLIN MERCER | ) | |

## **MEMORANDUM AND ORDER**

The defendant pled guilty to failing to register as a sex offender. He will be sentenced on July 20, 2017. The United States Probation Office has prepared and disclosed a Presentence Investigation Report ("PSR") [doc. 17]. The defendant has filed five objections to the PSR, including a challenge to the recommendation that the court impose a special condition of supervised release pertaining to sex offenders. That condition provides, "The defendant shall submit to a psychosexual assessment at his/her own expense, as directed by the probation officer."

The probation office has filed a PSR Addendum responding to the defendant's objections [doc. 20], and the United States has addressed the disputed special supervision condition in its sentencing memorandum [doc. 21]. For the reasons that follow, all of the defendant's objections will be overruled and the disputed special condition will be imposed, although in a slightly modified form.

# I.

## *Background and Criminal History*

The agreed factual basis in this case, which was signed by the defendant and his attorney, provides in material part,

> On April 27, 2005, the defendant pleaded guilty to two counts of sexual battery in violation of Tennessee Code Annotated § 39-13-505 in Sullivan County, Tennessee. As a result of this conviction, the defendant was required to register as a sex offender.
>
> The defendant was placed on supervised release [in 2015, following state convictions for violations of the sex offender registry] and fitted with an electronic monitoring device. On November 1, 2016, while under supervised release, the defendant removed the electronic monitoring device and the Tennessee Board of Probation and Parole submitted a Violation of Probation petition and requested assistance from the Tennessee Department of Corrections, which placed the defendant in a fugitive status.
>
> On January 12, 2017, the Tennessee Department of Corrections and the United States Marshals Service arrested the defendant at the Veterans Affairs Medical Center in Mountain Home, Tennessee [where he was working].
>
> Between November 1, 2016[,] and January 12, 2017, the defendant traveled in interstate commerce between various communities in Virginia and Tennessee. The defendant did not notify law enforcement authorities of his presence in those communities and did not comply with the sex offender registration laws of Tennessee and Virginia during that period of time.
>
> The defendant was aware of his obligation to update his registration in Tennessee and in Virginia and knowingly and willfully failed to register.

[Doc. 13].

The remaining pertinent background information discussed below is taken from the PSR and has not been objected to by the defense. As such, these details are conclusively accepted by the court as findings of fact. *See* Fed. R. Crim. P. 32(i)(3)(A).

The above-cited 2005 convictions, for Sexual Battery, stemmed from events occurring in 2003. The victim was thirteen years old and the defendant was eighteen. [PSR ¶ 26]. The defendant had consumed at least fourteen beers. *Id.*

The defendant's subsequent convictions include violent and reckless conduct. *Id.* ¶¶ 28, 29. He committed multiple infractions while in the custody of the Tennessee Department of Correction. *Id.* ¶ 28. He has violated conditions of probation and has three prior convictions for violation of the sex offender registry. *Id.* ¶¶ 26, 31, 32. On one of those occasions, he was ultimately located hiding in a home where children were present. *Id.* ¶ 33. The defendant subsequently used a knife to cut off an electronic tracking device and went missing for more than two months. *Id.* ¶ 32. Admittedly, he was "on the run." *Id.* ¶ 46. His polysubstance abuse began at age twelve and has continued at least through the arrest date in this case. *Id.* ¶¶ 27, 28, 29, 33, 55.

II.

*Objection One*

On page two, the PSR indicates that the defendant was served on a writ of habeas corpus ad prosequendum on March 6, 2017. The defendant's first objections states that he "believes he was served with the writ of habeas corpus ad prosequendum on March 3, not March 6, 2017. The arrest warrant in CMECF (Doc. 10) reflects the arrest date should reflect March 6, 2017."

The defendant is incorrect. The arrest warrant in this case shows that he was arrested on March 3, 2017. [Doc. 10]. The PSR Addendum correctly notes that fact. The defendant's first objection will be overruled.

III.

*Objection Two*

By his second objection, the defendant seeks to clarify that the conviction at PSR paragraph 26 was based on an *Alford* plea. The PSR Addendum incorporates that fact. The defendant's second objection will accordingly be overruled as moot.

IV.

*Objection Three*

At paragraph 32, the PSR states, "According to the defendant's Tennessee Department of Correction file, he is a 'suspected' member of the Aryan Nation. Related to this is a tattoo with lightning bolts . . . which has been covered up with a clown face image. He is also listed as having an iron cross tattoo on his upper left arm and chest." The PSR later states,

> The defendant's Tennessee Department of Correction (TDOC) "pen pack" classifies him as a suspected member of the Aryan Nation gang and references certain tattoos and markings which have been covered by another tattoo on his upper right arm. Specifically referenced is the defendant's clown tattoo on his upper right arm which the "pen pack" notes appears to be covering a tattoo of lightning bolts, which can be indicative of Aryan Nation membership. The defendant advised he was classified as a "suspected" Aryan Nation [member] due to a cellmate's Aryan Nation membership.

PSR ¶ 48. By his third objection to the PSR, the defendant

> denies any affiliation with any gang and objects to any reference to any suspicion of him being a member of the Aryan Nation. Mr. Mercer's tattoo now depicts a clown and no TDOC records indicate active membership. Mr. Mercer does not wish to have any negative treatment while incarcerated given any suspicion not confirmed of gang activity. Mr. Mercer explained he was classified as being suspected of Aryan Nation affiliation because [of] his cellmate's membership in that gang.

4

The court has reviewed the relevant TDOC records and a photo of the "clown tattoo," as provided to the court by the probation office. The tattoo contains an "SS" (in "lightning bolt" form) and the letters "A" and "N," all within in the clown's hat. The tattoo speaks for itself. Further, TDOC records reference the above-noted tattoos and list the defendant only as being a "suspected" Aryan Nation member.

The disputed contents of the PSR are completely supported by TDOC records and constitute information necessary for the Federal Bureau of Prisons to determine its own security classification for this defendant. The PSR references only that the TDOC "suspected" the defendant of being a member of the Aryan Nation. The defendant's alternative explanation for the TDOC's "suspicion" is incorporated into PSR paragraph 48 and the PSR Addendum. For all these reasons, the defendant's third objection will be overruled.

V.

*Objection Four*

By his fourth objection, the defendant disputes the circumstances under which he was terminated from his last job. This issue will not impact sentencing nor will it even be considered by the court at sentencing. The objection will accordingly be overruled as moot. *See* Fed. R. Crim. P. 32(i)(3)(B)

VI.

*Objection Five*

As noted, the PSR recommends imposition of one of the thirteen sex-offender special conditions of supervision adopted by this court's Standing Order SO-15-06. The

5

condition at issue provides, "The defendant shall submit to a psychosexual assessment at his/her own expense, as directed by the probation officer." The defendant objects to this requirement because the conviction in this case is not a sex crime and because he has not been convicted of any subsequent sex offenses.

The defendant is correct that the instant offense of conviction is not a "sex offense" under the United States Sentencing Guideline Manual ("U.S.S.G."). *See* U.S.S.G. §§ 5D1.2 cmt. n.1, 5D1.3(d)(7). Nonetheless,

> A sentencing court may impose a non-mandatory condition of supervised release . . . if it meets three requirements. <u>First</u>, the condition must be "reasonably related to" several sentencing factors. These factors are "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner." <u>Second</u>, the condition must "involve[] no greater deprivation of liberty than is reasonably necessary for" several sentencing purposes. These purposes are "to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner." <u>Third</u>, the condition must be "consistent with any pertinent policy statements issued by the Sentencing Commission." Because they are written in the conjunctive, a condition must satisfy all three requirements. However, a condition need not satisfy every single factor and purpose within each of the first two requirements.

*United States v. Carter*, 463 F.3d 526, 529 (6th Cir. 2006) (citations and footnotes omitted) (emphasis added).

In *Carter*, the defendant pled guilty in 2001 to being a felon in possession of a firearm. In 2005, the district court added a supervised release condition pertaining to sex

6

offenders (participation in "a sexual offender treatment program and evaluation"). *See id.* at 528. Carter's criminal history included 1988 convictions for rape and assault with intent to commit rape, along with a 2004 stalking conviction. The Sixth Circuit concluded that the 1988 convictions were too remote in time to justify the 2005 imposition of the sex-offender-treatment condition. *See id.* at 532. Carter's case was remanded for the district court to determine whether the 2004 stalking offense was sufficiently sexual to justify imposition of the special condition. *Id.* at 533.

*Carter* did not, however, "decide precisely how much time must elapse before a sex offense becomes too remote in time to be reasonably related to a sex-offender condition . . . ." *Id.* at 532. Subsequently, the Sixth Circuit has affirmed the imposition of sex-offender conditions based on multiple sex offenses occurring as recently as 12 years prior. *See United States v. Brogdon*, 503 F.3d 555, 565 (6th Cir. 2007). Also, in the 2006 case of *United States v. Perkins*, 207 F. App'x 559, the Sixth Circuit upheld a sex-offender-treatment condition in light of a 1995 aggravated assault conviction (pled down from aggravated rape), a 1994 assault conviction, older assault *charges*, and violent conduct toward a woman in his federal case. *See id.* at 562.

While the present defendant is indeed correct that his present crime is not a sex offense, the nature and circumstances of the instant case is not the only factor to be considered at the first step of the *Carter* test. Special conditions may also be "reasonably related to" the defendant's history and characteristics, the need to deter the defendant from future crime, the need to protect the public, and the need to provide medical or other correctional treatment in the best manner. *Id.* at 529.

7

The court finds that a special condition of supervision requiring a psychosexual assessment is "reasonably related to" the history and characteristics of this defendant. The defendant's state court sexual battery convictions, for conduct involving a thirteen-year-old child, predate the instant conviction by approximately twelve years. His sex offenses are not nearly as remote as those in *Carter*. In the years since those convictions, there have been two convictions involving violent conduct. There have been multiple disciplinary infractions while in TDOC custody, violation of probation conditions, and three (now four) convictions for sex offender registry noncompliance. The defendant has been found hiding in a home where children were present. He has removed an electronic tracking device and gone "on the run" for more than two months. To the extent that the defendant would argue that his sexual batteries occurred during and/or after the consumption of fourteen beers, the court notes that his polysubstance abuse has continued at least through the arrest date in this case.

Cumulatively, these aspects of the defendant's history and characteristics indicate that a heightened degree of supervision will be needed. The record to date suggests a very high risk of continued criminal conduct. As noted in the United States' sentencing memorandum, the defendant "seems unable or unwilling to conform his behavior to the law."

For these reasons, the court finds that a special condition requiring psychosexual assessment would be reasonably related to the additional sentencing factors of: the need to afford adequate deterrence to criminal conduct; the need to protect the public from

further crimes of the defendant; and the need to provide the defendant with needed medical care or other correctional treatment in the most effective manner.

As for *Carter*'s second prong, the court finds that the sex-offender condition at issue would involve no greater deprivation of liberty than is reasonably necessary for the sentencing purposes of adequate deterrence, protection of the public, and effective provision of medical care or other correctional treatment. Imposition of the contemplated degree of supervision is not greater than reasonably necessary in light of the defendant's sex-offense history and his pattern of disregard for the law. It is also worth noting that only one of the thirteen SO-15-06 conditions will be imposed in this case and, as will be explained below, the court will impose that condition in a less burdensome way.

As for *Carter*'s final prong, the court finds that imposition of a sex-offender condition in this case would be consistent with pertinent policy statements issued by the Sentencing Commission. Guideline 5D1.3(d) is a policy statement of the Sentencing Commission. *See* U.S.S.G. § 5D1.3(d). That policy statement provides that sex-offender conditions are not only recommended "[i]f the instant offense of conviction is a sex offense" but also, "in addition, may otherwise be appropriate in particular cases." *Id.* Having considered the relevant history and characteristics of the defendant, the court finds psychosexual assessment to be appropriate and necessary in this case, as explained above.

However, in light of the age of the defendant's sexual battery convictions, the court will impose SO-15-06(8) in a slightly modified form. That adjusted version, which has been used by judges of this district in several cases, provides, "The defendant shall

submit to a psychosexual assessment at his own expense, as directed by the probation officer, *with the exception of plethsymography testing*."

VII.

*Conclusion*

For the reasons provided herein, the defendant's objections to his PSR are **OVERRULED**. This court's special condition of supervision SO-15-06(8) will be imposed in this case as modified immediately above. Sentencing remains set for Thursday, July 20, 2017, at 10:30 a.m. in Greeneville.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge